2019 IL App (1st) 182382-U

No. 1-18-2382

Order filed December 19, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL PARKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 L 7981 |
| | ) | |
| LOFTON & LOFTON MANAGEMENT V, INC., | ) | Honorable |
| | ) | Allen Price Walker, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's grant of summary judgment in favor of defendant where plaintiff failed to raise a genuine issue of material fact with regard to any of the allegations in his complaint.

¶ 2    Plaintiff, Michael Parker, filed a three-count complaint in the circuit court of Cook County after he was involved in an altercation outside of a McDonald's restaurant owned by defendant, Lofton & Lofton Management V, Inc. (Lofton). Plaintiff claimed that one of Lofton's employees, Darryl Haynes, struck him in the eye causing him permanent injuries. Plaintiff

sought relief against both Lofton and Haynes.[1] Plaintiff's claims against Lofton are the sole issues on appeal. In his complaint, plaintiff contended (1) that Lofton was liable for the criminal actions of Haynes through the doctrine of *respondeat superior*; (2) that Lofton was negligent in failing to adequately supervise Haynes; and (3) that Lofton was negligent in hiring and retaining Haynes as an employee despite his criminal history. The trial court granted Lofton's motion for summary judgment finding that, at the time of the altercation, Haynes was not acting within the scope of his employment and that plaintiff failed to present evidence demonstrating that Haynes was unfit for his employment such that Lofton was negligent in failing to supervise him or in hiring and retaining him.

¶ 3    On appeal, plaintiff contends that the court erred in granting Lofton's motion for summary judgment where the trial court employed the incorrect standard of review applicable to motions for summary judgment and resolved disputed issues of material fact in favor of Lofton, rather than viewing the evidence presented in a light most favorable to the plaintiff. Plaintiff further contends that the evidence presented shows that Lofton owed a duty to protect plaintiff, as a patron of the restaurant, from harm, that Lofton breached that duty by improperly hiring, retaining, and failing to supervise Haynes, and that Lofton's breach proximately caused plaintiff's injuries. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5    The record shows that on February 25, 2015, plaintiff's stepfather, Charles Butler, was eating at the McDonald's restaurant on North Western Avenue in Chicago, Illinois. Haynes was cleaning tables in the McDonald's dining area. Butler asked Haynes to stop spraying the cleaning solution on the tables near him because it was disturbing him. Butler told the security guard

---

[1] Haynes was the defendant in separate criminal proceeding in case number 15-CR-04856-01.

about the incident and Haynes told Butler to leave the restaurant before he beat him. Butler exited the restaurant and told plaintiff about the incident. Plaintiff, who had eaten at the McDonald's earlier in the day and had been standing outside, entered the McDonald's and told Haynes that he should not spray the cleaning chemicals around people's food. Plaintiff exited the restaurant and spoke with some friends in a parking space in the McDonald's parking lot. After about half an hour, plaintiff started walking into the Walgreens parking lot next door to the McDonald's on his way to the bus stop on the corner. As plaintiff walked toward the bus stop, he heard someone call his name and then was struck by Haynes in the side of the face, near his right eye. As a result of his injuries, plaintiff lost vision in his right eye.

¶ 6    Plaintiff filed a complaint against Lofton and Haynes. In Count I of his complaint, plaintiff asserted that while he was on the premises of the McDonald's, Haynes, without provocation, battered him with a metal bar he obtained from "his work site." Plaintiff asserted that because Haynes was working in the course of his employment for Lofton, Lofton was liable for the injuries plaintiff suffered. In Count II, plaintiff contended that while he was eating his food in the McDonald's restaurant, Haynes sprayed a cleaning solution on plaintiff and his food.[2] Plaintiff asserted that Lofton failed to properly train and supervise Haynes, which resulted in Haynes following plaintiff outside and striking him with a metal bar. Finally, in Count III, plaintiff contended that before hiring Haynes, Lofton failed to conduct a background search of his criminal history and failed to fire Haynes after he violated written procedures. Plaintiff maintained that Lofton failed to discover Haynes' numerous felony convictions that included

---

[2] As discussed below, this claim conflates Haynes' interaction with Butler and Haynes' interaction with plaintiff. Although plaintiff maintains his claim for negligent supervision on appeal, he supports the claim with a different factual basis.

evidence of his "vicious propensities." Plaintiff asserted that these acts and omissions resulted in Lofton hiring Haynes, which led to Haynes battering plaintiff.

¶ 7     Lofton filed a motion for summary judgment contending that it was not liable for Haynes' action under the doctrine of *respondeat superior* because Haynes quit prior to the altercation. Lofton asserted that Haynes therefore was not an employee at the time of the incident. Lofton further asserted that even assuming Haynes was still an employee of Lofton at the time of the altercation, Lofton was not liable for his actions because Haynes was not acting within the scope of his employment. Lofton contended that the altercation did not occur on the restaurant's premises and Haynes engaged in conduct that he was not employed to perform. Lofton also contended that it could not be liable for negligently hiring Haynes because there was nothing in his criminal background or work history that suggested Haynes posed a danger to the restaurant's customers.

¶ 8     In response to Lofton's motion, plaintiff contended that Lofton could be held vicariously liable for Haynes' conduct because Lofton, as the landowner, owed plaintiff a duty to protect him from unreasonable risk of physical harm or assault by a third party. Plaintiff further asserted that Haynes was acting within the scope of his employment because the evidence presented showed that Haynes did not quit his job before the altercation and Lofton's employees testified that Haynes had not been fired. Plaintiff also contended that the location of the assault, a material fact, was in dispute, thus precluding the entry of summary judgment. Finally, plaintiff contended that there were disputed issues of fact as to whether Lofton was negligent in hiring Haynes, negligent in failing to properly supervise Haynes, and negligent in retaining Haynes despite previous workplace incidents.

¶ 9    In granting Lofton's motion, the trial court found that although the testimony was "somewhat conflicting," based on the evidence presented, the incident at issue occurred on Walgreens property. The court found, however, that whether the incident occurred on Walgreens property or McDonald's property was not "relevant, nor material." Likewise, the court found that whether Haynes struck plaintiff with a metal object was not "material," but the court noted that plaintiff testified that he did not see a metal object and every other witness testified that Haynes hit plaintiff with his fist.

¶ 10    With regard to plaintiff's *respondeat superior* claim, the court reasoned that the determining factor was whether Haynes was acting within the scope of his employment at the time he struck plaintiff. The court found that Haynes was not acting within the scope of his employment because his actions were not related to Lofton's business. The court therefore granted summary judgment on that count. The court also granted summary judgment on plaintiff's claims for negligent hiring and retention because plaintiff failed to present evidence that Haynes was unfit for the position and that his hiring created a danger to third persons, or that Lofton knew of any such unfitness. The court noted that plaintiff emphasized Haynes' criminal background, but plaintiff did not present any evidence of the nature of Haynes' convictions. The court noted that in his deposition Haynes testified that his convictions were drug related. The court found that there was no evidence in the record that Haynes had a conviction for a violent criminal act. The court cited Illinois precedent suggesting that a nonviolent criminal background is not an indicator of future violent behavior and does not put an employer on notice of a person's potential propensity for violence. The court therefore granted summary judgment on plaintiff's claims for negligent hiring and retention. Plaintiff filed a motion to reconsider that ruling to which plaintiff attached a discovery deposition from Ronald Hauri, who had a

background in behavioral sciences and law enforcement. Hauri testified, *inter alia*, that it was "reckless and dangerous" for Lofton to hire and retain Haynes in part based on his criminal history. The circuit court denied plaintiff's motion. Plaintiff now appeals.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, plaintiff contends that the trial court erred in granting Lofton's motion for summary judgment where the court deviated from the standard of review on a motion for summary judgment by deciding issues of disputed fact in favor of the defendant and where the record contained the requisite evidence to prove each theory of liability or at least raise a genuine issue of material fact. Plaintiff asserts that there was sufficient evidence in the record from which a reasonable trier of fact could find that Haynes was Lofton's employee at the time of the incident, that the incident occurred on Lofton's property, that Lofton was negligent in hiring and retaining Haynes, and that Lofton was negligent in failing to supervise Haynes. Plaintiff asserts that there was at least a genuine issue of material fact that Lofton was liable for plaintiff's injuries, precluding the court's entry of summary judgment.

¶ 13                              A. Standard of Review

¶ 14    Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. In determining whether a genuine issue of material fact exists, the court construes the pleadings, depositions, and affidavits against the moving party and liberally in favor of the opposing party. *Carney*, 2016 IL 118984, ¶ 25 (citing *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49). A genuine issue of material fact exists "where

the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal*, 2012 IL 112341, ¶ 49.

¶ 15    In order to survive a motion for summary judgment, a plaintiff need not prove his case, but he must present a factual basis that would arguably entitle him to a judgment. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12 (citing *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002)). "In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns*, 2014 IL 116998, ¶ 12. "In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper." *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991); see also, *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 483 (2002) ("Whether a duty of care exists is a question of law which may be determined on a motion for summary judgment.")). We review the circuit court's ruling on a motion for summary judgment *de novo*. *Bruns*, 2014 IL 116998, ¶ 12.

¶ 16                              B. The Trial Court's Ruling

¶ 17    Plaintiff first contends that we should reverse the trial court's judgment because it applied the incorrect standard of review to the summary judgment motion. Plaintiff asserts that the court improperly decided disputed issues of material fact and erroneously rejected disputed evidence that supported plaintiff's case. Plaintiff points out that there was conflicting evidence regarding whether Haynes hit plaintiff with his fist or a metal object, where the attack occurred, and whether Haynes' criminal history was evidence that he was a dangerous person. Plaintiff maintains that these were questions for the trier of fact and the court erred in resolving them in ruling on the motion for summary judgment.

¶ 18    In granting Lofton's motion, the trial court found there was "somewhat conflicting—not really conflicting, but there is testimony as to whether or not this occurred in—on the McDonald's property as opposed to on the Walgreens property." The court found that based on the testimony presented, the incident occurred on the Walgreens property, but found that the location of the incident was not "relevant, nor material." Likewise, the court noted that there was a "question as to whether or not [Haynes] struck [plaintiff] with a metal object." The court also did not think this issue was material, but observed that plaintiff testified that he did not see a metal object and every other witness testified that Haynes hit plaintiff with his fist. Further, in finding that plaintiff failed to present evidence that Haynes' criminal history demonstrated that he was unfit for the position with Lofton, the court noted that plaintiff failed to present any evidence as to what Haynes' convictions were and Haynes testified they were "drug-related." The court relied on three appellate court decisions in finding that a history of nonviolent crimes does not put an employer on notice of an employee's propensity for violence.

¶ 19    As noted, summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file establish that there is no genuine issue of *material fact* and that the moving party is entitled to judgment as a matter of law. (Emphasis added.) 735 ILCS 5/2-1005(c) (West 2016); *Carney*, 2016 IL 118984, ¶ 25. A material fact is one that "might affect the outcome of the suit." *GreenPoint Mortgage Funding, Inc. v. Hirt*, 2018 IL App (1st) 170921, ¶ 17. Here, we find support for the trial court's conclusions that location of the incident and whether Haynes used a metal object to strike plaintiff were not material. As the trial court found, Lofton could not be held liable for Haynes' actions because Haynes was not acting within the scope of his employment and because plaintiff failed to present evidence that Haynes was unfit

for the position. We agree, and, thus, the location of the incident and whether Haynes used a metal object to strike plaintiff is immaterial.

¶ 20    Further, we observe that the trial court did not actually decide the issue of whether plaintiff was struck with a metal object as plaintiff contends. During argument on Lofton's motion and in its ruling, the trial court noted that plaintiff testified that he believed he was struck with a metal object, but observed that every other witness testified that Haynes hit plaintiff with his fist. The court did not decide the issue, however, noting that the point was not "material." Plaintiff asserts that the issue was material because a jury could determine that Haynes struck plaintiff with a metal object and then could "evaluate the danger that Haynes presented in his employment capacity with" Lofton. This somewhat circular reasoning misses the mark with regard to plaintiff's claim that Lofton was liable for Haynes' conduct. There is no suggestion that the metal object was somehow related to Haynes' employment or that Haynes' possession of a metal object was in any way related to Lofton's negligence.[3] Accordingly, we agree that, to the extent this issue was disputed, it was not material such that the conflicting testimony would preclude the court's entry of summary judgment.

¶ 21    With regard to the location of the altercation, the court likewise found this point was not material, but nonetheless determined that the altercation clearly occurred in the Walgreens parking lot. This conclusion is amply supported by the evidence presented and cannot be said to be in dispute as plaintiff claims. Haynes testified at his criminal trial that the altercation was "nowhere near McDonald's" and was on the "Walgreens property." The McDonald's security guard, Larry Weatherspoon, also testified at Haynes' criminal trial that the altercation occurred

---

[3] We observe that plaintiff contended that Haynes obtained the metal object from his "work site," but as discussed below, this baseless contention was unsupported by any evidence.

in the Walgreens parking lot. Butler, plaintiff's stepfather, also testified that the altercation took place in the Walgreens parking lot. Similarly, plaintiff testified at the criminal trial that he heard someone call his name "as he entered the Walgreens parking lot," but before he could turn around, he was "attacked" from behind. At his deposition, however, plaintiff testified that he could not remember if he was in the Walgreens parking lot when Haynes hit him. He testified that he was talking to some friends in a parking space in the McDonald's parking lot when he started walking toward the bus stop, but "everything [] happened so fast" that he could not tell where he was when Haynes hit him. Ignacio Almazañ Sanchez, the general manager of the McDonald's where Haynes was employed, testified at his deposition that the fight occurred in the Walgreens parking lot. Thus, every witness testified that Haynes struck plaintiff in the Walgreens parking lot. The only testimony presented to the contrary was plaintiff's deposition testimony, which was contrary to his testimony at the criminal trial, and which, as the trial court noted, did not even contradict the other evidence presented. Plaintiff merely testified that he could not recall where he was when Haynes hit him. This is insufficient to create a genuine issue of material fact precluding summary judgment. See *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007).

¶ 22    Finally, the trial court's conclusion that plaintiff failed to present evidence to show that Haynes' criminal background put Lofton on notice of Haynes' propensity for violence is well supported by the record. As the trial court noted, the only evidence presented regarding the nature of Haynes' convictions was his testimony at his deposition that they were drug related. At the hearing on Lofton's motion for summary judgment, however, plaintiff's counsel represented that Haynes had convictions for burglary and attempted escape from jail, as well as handgun violations. Plaintiff asserts that these convictions amply demonstrate Haynes' propensity for

violence and the trial court erred in disregarding them. We find this court's decision in *Montgomery v. Petty Management Corp.*, 323 Ill. App. 3d 514 (2001) persuasive. In that case, the defendant, an employee of McDonald's, battered a patron after an argument. *Id.* at 516. On appeal, the plaintiff patron argued that the defendant restaurant was negligent in hiring the employee because his background indicated that his hiring would create a foreseeable danger. *Id.* at 519. This court disagreed finding that there was nothing in the employee's background suggesting that he was unfit to work as a cook at McDonald's or that he had a propensity for violence. *Id.* at 519-20. The court noted that defendant had been a member of a gang and had an arrest record, but the nonviolent nature of defendant's background did not tend to show that he would foreseeably be a danger to customers. *Id.* at 520.

¶ 23    Here, too, Haynes' background does not tend to show that he would foreseeably be a danger to customers and the trial court correctly decided that issue on summary judgment. Even accepting plaintiff's unsupported contentions that Haynes had convictions for burglary, attempted escape from jail, and handgun violations, plaintiff failed to present any evidence that these convictions involved violent behavior. As in *Montgomery*, there was nothing in Haynes' criminal background to suggest that he had a propensity for violence toward customers. *Id.* Accordingly, we find that the court did not err in finding that Haynes' criminal background did not put Lofton on notice of Haynes' propensity for violence. Having determined that the court did not apply the improper standard of review in ruling on Lofton's motion and did not inappropriately resolve disputed issues of material fact, we may now address the merits of plaintiff's appeal.

¶ 24                          C. *Respondeat Superior*

¶ 25 Plaintiff first contends that the court erred in granting summary judgment on the *respondeat superior* count of his complaint because Haynes was acting within the scope of his employment when the altercation occurred. Plaintiff asserts that Haynes was still employed by Lofton at the time of the incident and the incident occurred on Lofton's property.

¶ 26 Initially, we note, as outlined above, the evidence presented clearly supports the trial court's conclusion that the altercation between plaintiff and Haynes occurred on Walgreens property. However, as the trial court found, this issue is not material to the outcome on this count. Nor is it relevant whether Haynes was still technically an employee of Lofton at the time of the incident. It is also not relevant whether Haynes did not clock out before striking plaintiff. *Montgomery*, 323 Ill. App. 3d at 518-19 ("Whether Holmes was on the clock is irrelevant. The mere fact that Holmes was working when the altercation occurred does not in fact mean that he was acting within the scope of his employment when the fight occurred."). Instead, a finding that Haynes was not acting within the scope of his employment at the time of the altercation with plaintiff would be dispositive of plaintiff's *respondeat superior* claim. *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009). "Pursuant to the theory of *respondeat superior*, an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment." *Id.* The employer's vicarious liability in such cases extends to the negligent, willful, malicious, or even criminal acts of its employees when such acts are committed within the scope of the employment. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163-64 (2007). In determining whether an employee is acting within the scope of the employment, a court considers whether (a) the act is the kind the employee is employed to perform; (b) the act occurs substantially within the authorized time and space limits; and (c) "it is actuated, at least in part, by a purpose to serve the master." *Id.* at 164 (citing Restatement (Second) of Agency § 228

(1958)); *Adames*, 233 Ill. 2d at 299 (citing same). All three of these criteria must be met in order for the court to conclude that an employee was acting within the scope of employment. *Bagent*, 224 Ill. 2d at 165. Although, as plaintiff points out, whether defendant was acting within the scope of employment is generally a question for the trier of fact, such a determination may be made as a matter of law where no reasonable person could conclude from the evidence presented that an employee was acting within the course of employment. *Giannoble v. P&M Heating and Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1056 (1992).

¶ 27    Here, it is clear that striking plaintiff in the parking lot was not the kind of act Haynes was employed to perform and thus no reasonable person could conclude that Haynes was acting within the course of employment. At his deposition, Haynes testified that his responsibility on the date of the incident was to clean the tables in the "lobby" of the restaurant. Fighting with plaintiff in the Walgreens parking lot is clearly far removed from the kind of act Haynes was employed to perform. Further, there is no evidence that Haynes' acts were actuated by a purpose to serve Lofton. Indeed, the fight with plaintiff appeared to be motivated solely by Haynes' personal desires. "Where an employee's conduct is actuated by a personal purpose rather than a purpose to serve the employer, it is not within the scope of employment." *Parks v. Brinkman*, 2014 IL App (2d) 130633, ¶ 66 (citing *Bagent*, 224 Ill. 2d at 169-70). Finally, the act did not occur within the authorized time and space limits. As noted, the altercation clearly took place in the Walgreens parking lot.

¶ 28    We further find plaintiff's reliance on *Sunseri v. Puccia*, 97 Ill. App. 3d 488, 490 (1981) unpersuasive. In *Sunseri*, a bartender got into a verbal confrontation with the plaintiff after the bartender asked to see his identification. *Id.* at 489-90. The confrontation escalated into a physical altercation both inside and outside of the restaurant. *Id.* at 490. The trial court entered a

directed verdict on plaintiff's claim for *respondeat superior*. *Id.* at 491. On appeal, this court reversed finding that the jury should have been permitted to determine whether the bartender's actions had been within the scope of his employment based upon the fact that the altercation occurred within the time and location of the employment, the foreseeability of the assault, and the defendant's presence during the commission of the act without intervening. *Id.* at 494. This court distinguished *Sunseri* in *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 679 (1998), noting that the court's ruling in *Sunseri* was based on the notion that "in cases involving assault by a bartender, liability often attaches to the employer because it is expected that a bouncer will be required to use force in doing his job, even though the force used may be unnecessary or excessive." The *Stern* court found that the circumstances in that case were distinguishable because it was not "expected" that a masseur would sexually assault a client during the course of a massage. *Id.* In the case at bar, we likewise find that it was not "expected" that a Lofton's McDonald's employee would physically assault someone in the Walgreens parking lot. Thus, we find the reasoning in *Sunseri* unpersuasive here.

¶ 29    There was also much discussion in the trial court and in the parties' briefs before this court as to whether Haynes was even an employee of Lofton at the time of the altercation. If Haynes was not an employee of Lofton at the time of the incident, clearly plaintiff would not have a viable *respondeat superior* claim. As outlined above, however, even assuming Haynes was an employee of Lofton at the time of the incident, we find that plaintiff failed to present any facts that would create a genuine issue of material fact as to any one of the three criteria for a *respondeat superior* claim. Nonetheless, we find that, based on the evidence presented, Haynes was no longer an employee of Lofton at the time of the incident.

¶ 30    The record shows that before Haynes went outside where he struck plaintiff, he had an interaction with a manager where the manager asked him to clean the bathrooms. Haynes refused and the manager told him clean the bathrooms or go home. Haynes "told them 'F*** this job,' and [he] left." Haynes did not clock out, but testified that he was not working for McDonald's at the time of the incident and had "quit McDonald's." Plaintiff asserts that Fred Brown, the area supervisor for Lofton's McDonald's, testified that Haynes was an employee of Lofton at the time of the altercation. This is, at best, a mischaracterization of Brown's testimony. Brown testified that although he made a formal decision to terminate Haynes after the incident "[Haynes] made the decision by walking out." Brown testified that Haynes quit *before* Brown made the decision "to terminate him." "I think my decision was secondary because I think he left—my understanding that he had left the building so like a voluntary quit." Consistent with that, Lofton's owner, Ronnie Lofton (Ronnie), testified that he learned that Haynes had quit the job before the incident which was "[e]nd of story" for him. He testified unequivocally that Haynes was no longer an employee of McDonald's at the time of the incident and it was irrelevant whether Haynes had clocked out prior to leaving the restaurant. The only witness who testified that Haynes was still an employee of Lofton at the time of the incident was Sanchez, who testified that Haynes had not been terminated. However, this testimony is clearly contrary to Haynes' own independent intention to terminate his employment with Lofton.

¶ 31    It was unnecessary for anyone at McDonald's to formally terminate Haynes where he was free to quit at any time and testified that he in fact did so. Haynes testified that after walking out of the restaurant he never returned and even had his mother pick up his final check. Plaintiff repeatedly emphasizes that in response to one plaintiff's counsel's questions, Haynes testified that he did not resign; however, this is merely an attempt by plaintiff to mischaracterize Haynes'

testimony and view it out of context. When viewed in full, it is clear from his testimony that Haynes quit his employment at McDonald's.

> "Q. All right. Did you believe that you had resigned when you left, or were you told as far as you know to leave?

> A. There was no resign [*sic*]. Me—none, whatever. I told them—my exact words was, 'F*** this job,' and I left. That was my exact words. I didn't punch out. I didn't take my shirt off, I didn't do none of that. I went in the back and got my stuff and walked out the door."

¶ 32    Thus, it is clear from Haynes' testimony, and the testimony of Brown and Ronnie, that Haynes quit prior to the incident and was not an employee of Lofton at the time of the incident. As noted, however, even assuming Haynes was an employee of Lofton at the time of the incident, plaintiff failed to present any facts that would create a genuine issue of material fact as to any one of the three criteria for a *respondeat superior* claim. Accordingly, we find that the trial court properly granted Lofton's motion for summary judgment on plaintiff's *respondeat superior* claim.

¶ 33                                D. Negligent Supervision[4]

¶ 34    Plaintiff next contends that the court erred in granting Lofton's motion for summary judgment on his claim for negligent supervision. Plaintiff asserts that given Haynes' criminal

---

[4] We observe that in his complaint, plaintiff based his claim for negligent supervision on Haynes spraying cleaning solution onto him and his food while he was eating in the McDonald's restaurant. The evidence presented, however, including plaintiff's own deposition testimony, demonstrates that Haynes never sprayed cleaning solution onto plaintiff or his food. Indeed, this appears to be a conflation of Haynes' interaction with Butler where Haynes sprayed cleaning solution onto tables near Butler while Butler was eating. Nonetheless, plaintiff maintains his claim for negligent supervision on appeal, raising allegations different from those raised in his complaint. Because we find that plaintiff's claim for negligent supervision would not survive a motion for summary judgment regardless of the manner in which plaintiff presents the claim, we will nevertheless address plaintiff's contentions as he presents them on appeal.

background and his prior confrontations with customers, Haynes' conduct was reasonably foreseeable. Plaintiff contends that Haynes had a proven record of engaging in hostile confrontations with patrons and his status as a convicted felon presented an unreasonable risk of harm to patrons.

¶ 35    In order to state a cause of action for negligent supervision, the plaintiff must establish that "(1) the employer had a duty to supervise its employee; (2) the employer negligently supervised its employee; and (3) such negligence proximately caused the plaintiff's injuries." *Lansing v. Southwest Airlines Co.*, 2012 IL App (1st) 101164, ¶ 22. In order to impose a duty to supervise, the employer needs only "general foreseeability" to put the employer on notice of an employee's conduct. *Doe v. Coe*, 2019 IL 123521, ¶ 61. A claim for negligent supervision differs from a *respondeat superior* claim because a claim for negligent supervision requires the plaintiff to prove that the employer itself was negligent, rather than proving that the employer is vicariously liable for the employee's conduct. *National R.R. Passenger Corp. v. Terracon Consultants*, 2014 IL App (5th) 130257, ¶ 15 (citing *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010)).

¶ 36    As discussed in detail above, at the time of the altercation, Haynes was not an employee of Lofton and the altercation occurred on Walgreens' property, not Lofton's property. Accordingly, Lofton had no duty to supervise Haynes at the time of the altercation. Nonetheless, even assuming Lofton had a duty to supervise Haynes, plaintiff has failed to raise a genuine issue of material fact that Lofton negligently supervised Haynes. Plaintiff points out that on the date of the incident, Sanchez, the general manger, left the McDonald's where Haynes was working to retrieve supplies from another restaurant. Plaintiff asserts that Lofton therefore failed to supervise Haynes because Sanchez left the restaurant. Plaintiff ignores, however, the testimony

that another manager was present at the restaurant prior to the incident. Indeed, it was this manager who instructed Haynes to clean the bathrooms before Haynes voluntarily terminated his employment. The record also shows that Sanchez was present in the restaurant during the verbal altercation between plaintiff and Sanchez and returned to the restaurant before Haynes exited the restaurant and struck plaintiff in the Walgreens parking lot. A security guard, Weatherspoon, was also present in the restaurant's lobby. The record thus shows that Lofton adequately monitored Haynes while he was an employee of the restaurant (*Doe*, 2019 IL 123521, ¶ 64).

¶ 37    We also find that Haynes' conduct was not "generally foreseeable." We find this court's reasoning in *MacDonald v. Hinton*, cited by the trial court in its ruling, instructive. In that case, the plaintiff sued the defendant after her son, an employee of the defendant, was murdered by one of his coworkers. *MacDonald v. Hinton*, 361 Ill. App. 3d 378, 379 (2005). The plaintiff alleged that the coworker was a known convicted killer who posed a danger to young men such as her son who he met through "mutual employment or otherwise." *Id.* at 380. The court found that the harm inflicted by the coworker on the plaintiff's son was not foreseeable because plaintiff failed to allege that her son was particularly at risk such that the defendant employer had a duty to warn him. *Id.* at 386-87. "Plaintiff's allegation that [the coworker] would kill individuals he befriended through 'mutual employment or otherwise,' leaves the threat of harm open to a very broad group of individuals who are not necessarily employees" of defendant, like her son. *Id.* at 387. Accordingly, the court found that the harm inflicted was not foreseeable. *Id.*

¶ 38    Here, even accepting plaintiff's unsupported contentions regarding Haynes' criminal background, the harm inflicted to plaintiff was not foreseeable because plaintiff did not allege that he was particularly at risk such that Lofton had a duty to supervise Haynes in his interactions with customers. Plaintiff's allegations that Haynes had a propensity for violence because of his

criminal background "leaves the threat of harm open to a very broad group of individuals." *Id.* Plaintiff thus failed to allege that he was particularly at risk from harm from Haynes. *Id.* at 386-87. Plaintiff points out that Haynes had received warnings for previous workplace violations and one of his managers had even recommended that he be fired. Plaintiff asserts that these incidents rendered Haynes conduct on the date of the incident foreseeable. However, the incidents described in Haynes' employee history involved arguments with other employees and noncompliance with directions from managers or his work schedule. Nothing in his employment history suggested that he posed a risk of harm to customers. Accordingly, we find that plaintiff failed to raise a genuine issue of material fact with regard to his claim for negligent supervision and that the trial court did not err in granting Lofton's motion for summary judgment on that claim.

¶ 39                              E. Negligent Hiring and Retention

¶ 40    Plaintiff next contends that the court erred in granting Lofton's motion for summary judgment on his claims for negligent hiring and retention. Plaintiff asserts that Haynes lied on his employment application indicating that he had not been convicted of a felony within the past five years and no one at Lofton verified the veracity of that claim. Plaintiff further asserts that while Haynes was an employee of Lofton, he was cited for multiple workplace violations, but Lofton nonetheless refused to fire him.

¶ 41    As with a claim for negligent supervision, "[a]n employer's direct liability for negligent hiring and retention is distinct from its *respondeat superior* liability for the acts of its employees." *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998) (citing *Bates v. Doria*, 150 Ill. App. 3d 1025, 1031 (1986)). "Under a theory of negligent hiring or retention, the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee,

rather than the employee's wrongful act." *Van Horne*, 185 Ill. 2d at 311. An action for negligent hiring or retention requires the plaintiff to plead and prove "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Id.* A plaintiff must show that the employee was unfit in a particular manner such that the unfitness rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. *Doe*, 2019 IL 123521, ¶ 66.

¶ 42    Here, we find that the court did not err in granting summary judgment on plaintiff's claims for negligent hiring and negligent supervision because plaintiff cannot satisfy the proximate cause element of his claim as a matter of law. We recognize that the issue of proximate cause is typically a matter for the trier of fact. *Brettman v. M&G Truck Brokerage, Inc.*, 2019 IL App (2d) 180236, ¶ 45. "However, if the facts alleged do not sufficiently demonstrate both cause in fact and legal cause, which involves policy considerations, the lack of proximate cause may be determined by a court as a matter of law." *Id.* Here, we may determine the lack of proximate cause in this case as a matter of law because plaintiff's cause of action cannot satisfy the proximate-cause standard under the existing record. *Id.* This is the case because "the definition of the cause of action of negligent hiring or retention centers on *the work* to be performed and whether the incompetent execution *of that work* caused harm to a third party. Again, in an action for negligent hiring or retention, the injury must have occurred by virtue of the servant's employment." (Emphasis in original.) *Id.* (citing *Bates*, 150 Ill. App 3d at 1025, 1032). That is, an employer may be liable for negligent hiring or retention " 'only where there was demonstrated some connection between the plaintiff's injuries and the fact of

employment.' " *Brettman*, 2019 IL App (2d) 180236, ¶ 45 (quoting *Bates*, 150 Ill. App 3d at 1032). "Were such a connection not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Bates*, 150 Ill. App. 3d at 1032.

¶ 43    In this case, we conclude that summary judgment was properly granted because there was no factual basis alleged to show that plaintiff's injuries were caused in any way by virtue of Haynes' employment at McDonald's. *Id.* As discussed, Haynes had already voluntarily quit his employment and the incident did not take place on Lofton's property. Most importantly, even accepting plaintiff's arguments that Haynes was still an employee of Lofton and the incident took place on Lofton's property, at the time of the altercation, Haynes was not engaged in conducting any of his duties as an employee of McDonald's. *Id.* That is, plaintiff could maintain an action for negligent hiring or retention only where his injuries were a result of Haynes' performance of the work he was employed to perform. *Brettman*, 2019 IL App (2d) 180236, ¶ 45. That is clearly not the case here. Plaintiff makes no suggestion that Haynes' conduct was in any way related to his responsibilities as an employee of McDonald's. Although the trial court did not rely on this reasoning in granting Lofton's motion, we note that we may affirm the trial court's grant of summary judgment on any basis appearing in the record whether or not the trial court relied on that basis. *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 5. Accordingly, we find that plaintiff has failed to present any evidence to raise an issue of fact upon which he could recover in a cause of action for negligent hiring and retention and we find that the trial court properly granted summary judgment in favor of Lofton on that issue.

¶ 44    We note, however, that there is a line of cases which relies on section 317 of the Restatement (Second) of Torts. Restatement (Second) of Torts § 317 (1965). Under that section,

an employer has a duty to control the conduct of an employee where the employee is on the premises of the employer or is using a chattel of the employer and the employer knows or should know of the necessity and opportunity to control the employee. *Hills v. Bridgeview Little League Association*, 195 Ill. 2d 210, 229 (2000) (citing Restatement (Second) of Torts § 317 (1965)). As discussed, at the time of the incident, Haynes was not an employee of Lofton, was not on the premises of Lofton, and was not using a chattel of Lofton. Although plaintiff summarily contended that Haynes struck him with a metal object he obtained from his "work site" plaintiff presented no evidence supporting this claim; either the fact of the metal object or the notion that Haynes obtained it from his "work site." As noted, the trial court correctly determined that the evidence presented demonstrated that Haynes struck plaintiff with his fist. Further, as discussed above, plaintiff failed to present evidence suggesting that Lofton knew or should have known of the necessity to control Haynes where there was nothing in his criminal background or employment history to suggest that he would strike a patron of the restaurant.

¶ 45    Plaintiff contends, however, that because of the "special relationship" between him and Lofton's McDonald's, Lofton had an affirmative duty to protect him from harm. Plaintiff is correct that in certain circumstances, a special relationship may give rise to an affirmative duty to protect another against unreasonable risk of physical harm. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 438 (2006). These relationships include "common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation." *Id.* Plaintiff maintains, citing *Marshall*, that Lofton, as a business invitor, owed him, an invitee, a duty to protect him from an unreasonable risk of harm. *Id.* at 440. However, by plaintiff's own testimony, he was not a business invitee at the time of the incident. Plaintiff testified that he ate

at the McDonald's earlier that day. At that point, he was a business invitee of Lofton. However, he left the McDonald's after finishing his meal. At that point, his status as business invitee ended. Although he later returned to the McDonald's, he did so for the sole purpose of confronting Haynes to tell him to stop spraying the cleaning solution on tables near Butler. Even assuming plaintiff regained his status as a business invitee when he reentered the restaurant, he clearly lost it when he, after exiting the restaurant, stood talking with friends in a nearby parking space for half an hour and then began to walk into the Walgreens parking lot on his way to the nearby bus stop before he was struck by Haynes. This court has held that, except in certain circumstances that are not present in this case, a business invitor does not owe a duty to a business invitee after the invitee leaves the premises. *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 60 ("The general rule is that a business invitee ceases to be an invitee, and the business invitor's duty ends, as soon as the invitee leaves the premises owned by the invitor."); see also, *Hougan v. Ulta Salon, Cosmetics & Fragrance, Inc.,* 2013 IL App (2d) 130270, ¶ 44 ("Ulta did not owe a duty of care to [plaintiff] when she was injured, because the sidewalk on which she was standing, as well as the allegedly dangerous parking lot, were under [the landlord's] exclusive control."). Accordingly, we find no "special relationship" existed between the parties at the time of the altercation such that Lofton owed plaintiff an affirmative duty of care to protect him from harm. As such, we find that the trial court did not err in granting Lofton's motion for summary judgment on his claims for negligent hiring and retention.

¶ 46                                  F. Ronald Hauri

¶ 47    Finally, plaintiff contends that the testimony of Hauri warrants the reversal of the summary judgment motion. Plaintiff asserts that Hauri was an expert in law enforcement and violent crime and the court erred in disregarding his testimony. Plaintiff points out that Hauri

opined that it was reckless and dangerous for Lofton to have hired Haynes, that Haynes' criminal background demonstrated that it was unreasonable and unsafe for Lofton to entrust Haynes to be around McDonald's patrons, and that Lofton failed to follow its own hiring procedures in failing to look into Haynes' criminal background. Plaintiff maintains that this testimony raises an issue of material fact that prevents the entry of summary judgment. We find, however, that Hauri's testimony does not warrant reversal. As noted, plaintiff's claims for negligent supervision, hiring, and retention must fail as a matter of law. In addition, his claim for *respondeat superior* must fail because there were no facts alleged that Haynes was acting within the scope of his employment at the time of the altercation. Hauri's testimony does not cure these defects. In any event, Hauri's testimony was essentially a recitation of plaintiff's allegations regarding Lofton's failure to examine Haynes' criminal background, and his allegations that Haynes' criminal background demonstrated his propensity for violence. As outlined above, none of these considerations are relevant to our ruling. As such, we find that Hauri's testimony does not warrant a reversal of the trial court's judgment.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 50    Affirmed.